IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:08CR50-WKW |
| | ) | |
| CHRISTOPHER DEAN | ) | |

## MOTION TO DISMISS INDICTMENT

**COMES NOW** the Defendant, **CHRISTOPHER DEAN,** by undersigned counsel, and moves this Court for an Order pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) Dismissing the Indictment in the above matter.

Mr. Dean seeks dismissal of this Indictment on several grounds. First, the statutory terms of SORNA make clear that the Act is not applicable to Mr. Dean because Alabama has yet to implement SORNA. To punish Mr. Dean for violation of an Act that is not yet applicable to him and with which he is unable to comply violates the *Ex Post Facto* Clause and the Due Process Clause of the Constitution. Second, Mr. Dean had no duty to register under SORNA because the Government failed to give him notice of any such duty as required by the statute itself and the Due Process Clause. Third, Congress improperly delegated the legislative function of determining the retroactivity of SORNA to the Attorney General in violation of the non-delegation doctrine. Fourth, the Attorney General's regulation, 28 C.F.R. §72.3, which purportedly applies SORNA retroactively, violates the Administrative Procedure Act (APA), 5 U.S.C. §553, as it was promulgated absent a 30-day notice and comment period. Fifth, the enactment of 42 U.S.C. §16913, which requires all sex offenders to register regardless of whether they travel in interstate commerce, is not a valid

1

exercise of Congress' power under the Commerce Clause. Finally, the application of an alternate jurisdictional provision, 18 U.S.C. §2250(a)(2)(B), violates the Ex Post Facto Clause and the Commerce Clause.

In support of this Motion, the defendant would submit the following memorandum.[1]

## MEMORANDUM

## I. STATEMENT OF THE CASE

Mr. Dean is charged in a single-count indictment with violating 18 U.S.C. §2250(a). The indictment alleges that Mr. Dean was required to register under the Sex Offender Registration and Notification Act (SORNA), and having traveled in interstate commerce and foreign commerce, knowingly failed to register and update a registration as required by the Sex Offender Registration and Notification Act, between July 2007 and August 2007, in Autauga County, within the Middle District of Alabama. The indictment does not allege a specific act or conviction.

## II. BACKGROUND OF THE SEX OFFENDER REGISTRATION NOTIFICATION ACT

SORNA creates a national sex offender registry law, 42 U.S.C. §§16901-16962, and requires every local jurisdiction (state) to maintain a sex offender registry which conforms to its requirements. 42 U.S.C. § 16912. The Attorney General has stated that SORNA "provides a *new comprehensive* set of minimum standards for sex offender registration and notification in the United States." 72 Fed. Reg. at 30210 (emphasis added). SORNA greatly expands the previous federal sex offender law, the Jacob Wetterling Act (42 U.S.C. §14071 *et. seq.*), and imposes a new and more onerous burden

---

[1]  Undersigned counsel is indebted to the research and work of Andrew Carter and Paresh Patel, Assistant Federal Defenders, District of Maryland.

on states and sex offenders.[2]  To provide "guidance and assistance" to jurisdictions in implementing

these new SORNA requirements, the Attorney General recently issued the proposed Sex Offender

Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART) Guidelines and set up

a SMART Office in the Department of Justice. 72 Fed. Reg. 30210-30234.

## A.  Retroactive Application of SORNA

SORNA was signed into law on July 27, 2006.  However, Congress did not decide whether

the provisions of the Act are applicable to (1) persons convicted before July 27, 2006, or (2) persons

convicted before the Act's implementation in a particular state.  Instead, Congress specifically

delegated these decisions to the Attorney General. 42 U.S.C. §16913(d).

On February 28, 2006, the Attorney General issued an interim regulation declaring that

SORNA is retroactively applicable to those convicted before the Act was passed. 28 C.F.R. §72.3.

The Attorney General issued this regulation before any period of public comment was completed.

---

[2]  SORNA prospectively repeals the Wetterling Act as of July 27, 2009. The Attorney General has identified several "important areas of reform under SORNA standards" that alter the Wetterling Act, including but not limited to:

- Expanding the jurisdictions in which registration is required beyond the 50 states, the District of Columbia, and the principal U.S. territories, to include Indian tribal jurisdictions;
- Expanding the classes of sex offenders and sex offenses for which registration is required;
- Consistently requiring that sex offenders in the covered classes register and keep their registrations current in the jurisdictions in which they reside, work, or go to school;
- Requiring more extensive registration information;
- Requiring periodic in-person appearances by registrants to verify and update registration information;
- Broadening the availability of information concerning registered sex offenders to the public, through posting on sex offender Web sites and by other means; and
- Adopting reforms affecting the required duration of registration.

72 Fed. Reg. 30211.

He certified that the new, sweeping rule was exempt from the APA's notice and comment requirements pursuant to §553(b)(3)(B) of that statute, because "notice and public procedures" were "impracticable, unnecessary, or contrary to the public interest." *See* 72 Fed. Reg. at 8896.

Although the Attorney General's regulation makes SORNA retroactive to sex offenders convicted prior to its enactment, no regulation makes the Act retroactively applicable to persons convicted before SORNA's implementation in a particular state.

### B. Period for Implementation

SORNA requires the Attorney General to develop software to assist states in implementing the law. In particular, the software should "enable jurisdictions to establish and operate uniform sex offender registries and Internet sites." 42 U.S.C. §16923. The Attorney General has until July 27, 2008 to make this software available to the states. States are only required to implement SORNA on either July 27, 2009, or one year after the software is made available. 42 U.S.C. §16923. If states have not implemented SORNA by this deadline, they will lose a percentage of their federal funding. 42 U.S.C. §16925(a).

On May 30, 2007, the Attorney General issued the proposed Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") Guidelines for the purpose of providing "guidance and assistance" to jurisdictions in implementing SORNA. 72 Fed. Reg. at 30210. These Guidelines provide that a jurisdiction has not implemented SORNA until it has "carrie[d] out the requirements of SORNA as interpreted and explained in these Guidelines," and the SMART Office of the Department of Justice has determined that it has done so. 72 Fed. Reg. at 30213-14.

To date, Alabama has not passed any legislation to comply with SORNA's requirements.

Moreover, Alabama currently has no procedure in place to collect, maintain, and disseminate information as required under SORNA. *See* Code of Alabama (1975) §§15-20-21 *et. seq.*

### C. Who Is a "Sex Offender" Subject to SORNA?

A person is a "sex offender" who must register under SORNA if he "was convicted of a sex offense." 42 U.S.C. §16911(1). "Sex offense" is defined to include various offenses against minors as well as a "criminal offense that has an element involving a sexual act or sexual contact with another." 42 U.S.C. §16911(5)(A)(I). SORNA classifies "sex offenders" into three tiers, depending on the seriousness of the offense. 42 U.S.C. §16911. An offender's tier level determines the duration of his registration period, which ranges from 15 years to life. 42 U.S.C. §16915.

### D. How Does a "Sex Offender" Register and Update Changed Information?

A sex offender must register and keep his registration current in each state in which he resides, is employed, and/or is a student. *See* 42 U.S.C. §§16911 (11), (12), (13), 16913(a). He must appear in person in each state where he is required to be registered and allow a photograph to be taken. The frequency of these appearances depends on the offender's tier level. *See* 42 U.S.C. §16916.

Additionally, no more than three days after any change of name, residence, employment or status, a sex offender must inform at least one of the jurisdictions where he or she resides, is employed, or is a student of the change – in person. 42 U.S.C. §16913(c).

### E. The Government Must Notify a Sex Offender of his Obligation to Register

SORNA explicitly provides that an appropriate Government official must notify a sex offender of his duty to register under SORNA. 42 U.S.C. §16917. For individuals who are in custody or awaiting sentencing for an offense giving rise to the duty to register under SORNA, the

5

Government must notify them of their SORNA obligations immediately after they are released from custody or immediately after sentencing. 42 U.S.C. §16917(a). Specifically, the Government must (1) "inform the sex offender of the duties of a sex offender under [SORNA] and explain those duties," (2) "require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement," and (3) "ensure that the sex offender is registered." *Id.*

For those sex offenders, like Mr. Dean, who have already served their sentences for an offense committed before SORNA's enactment, the Act directs the Attorney General to prescribe specific rules for notification. 42 U.S.C. §16917(b). To date, the Attorney General has not issued such rules. However, in the proposed SMART Guidelines, the Attorney General provides that for those offenders "with pre-SORNA or pre-SORNA-implementation convictions [like Mr. Dean] who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation," jurisdictions must "fully instruct[] them about the SORNA requirements, [and] obtain[] signed acknowledgments of such instructions." 72 Fed. Reg. at 30228. No Government official notified Mr. Dean of his duty to register or explained the registration requirements under SORNA prior to his detention on the current offense.

### F. What Information Is Made Available to the Public?

#### 1. State Websites

Under SORNA each state must maintain a website that makes available at least the following information:

> a. The name and any aliases of the sex offender;
> b. The address of the sex offender;
> c. The license plate number of any vehicle owned or operated by the sex

6

offender;

d.   A physical description of the sex offender;

e.   A current photograph of the sex offender;

f.   The text of the particular law under which the offender was convicted;

g.   The sex offender's criminal history, including the dates of all convictions; the status of parole, probation or supervised release; registration status; and the existence of any outstanding arrest warrants;

h.   A photocopy of the sex offender's driver's license or ID card; and

i.   Any other information required by the Attorney General.

42 U.S.C. §§16914(a) and (b), 16918.

2. National Website

SORNA also establishes the Dru Sjodin National Sex Offender Public Website to be maintained by the Attorney General, which will include "relevant information for each sex offender and other person listed on the jurisdiction's website," and make "relevant information" publicly accessible. 42 U.S.C. §16920. Each state must include in the design of its own website all field search capabilities needed for full participation in the Dru Sjodin Website and "shall participate in that website as provided by the Attorney General." 42 U.S.C. §16918.

3. Community Notification

SORNA establishes a Community Notification Program, which requires an "appropriate official" in the state, immediately after an offender registers or updates information, to provide "information in the registry" to:

a.   the Attorney General, who shall include it in the National Sex Offender Registry or other appropriate databases;

b.   appropriate law enforcement agencies, including probation agencies, and each school and public housing agency, in each area where the offender resides, is an employee, or is a student;

c.   each jurisdiction where the offender resides, is an employee, or is a student, and each jurisdiction from or to which a change of residence, employment or student status occurs;

d.   any agency responsible for conducting employer-related background

7

checks under 42 U.S.C. § 5119(a);

    e.   child welfare social service entities;

    f.   volunteer organizations in which contact with minors and "other vulnerable individuals" might occur; and

    g.   "*[a]ny organization, company, or individual who requests such notification* pursuant to procedures established by the jurisdiction."

42 U.S.C. § 16921 (emphasis added).

### G. New Crime and Penalties - 18 U.S.C. §2250(a)

The Adam Walsh Act creates the new federal offense of failure to register under SORNA, 18 U.S.C. §2250(a). Generally, a person violates 18 U.S.C. §2250(a) when he has a duty to register under SORNA, he knowingly fails to register, and he travels in interstate commerce.

A violation of 18 U.S.C. §2250 carries a penalty of up to ten years in prison for a first-time offense. An offender who commits a crime of violence during a period when he also fails to register is subject to a mandatory minimum punishment of five years, and a potential maximum of thirty years in addition to and consecutive to the penalty he receives for his failure to register. 18 U.S.C. §2250(c). An offender who commits a felony offense involving a minor during a period he fails to register is subject to a consecutive mandatory sentence of ten years. 18 U.S.C. §2260A.

### ARGUMENT

**I.    SORNA IS NOT APPLICABLE TO MR. DEAN BECAUSE HE IS "UNABLE" TO REGISTER UNDER THE ACT**

**A.    Mr. Dean Was "Unable" to Initially Register Under the Plain Language of Section 16913(b) of SORNA**

Section 16913(b) of SORNA provides as follows:

The sex offender shall initially register –

8

    (1)      before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

    (2)      not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

Mr. Dean was released from prison prior to SORNA's enactment in July, 2006. Therefore, he is not covered by the "initial registration" provision of §16913(b). *See United States v. Dillenbeck*, 2007 WL 2684838, at *2 (D.S.C. Sept. 7, 2007) ("Subsection (b) does not specify an initial registration for . . . sex offenders who were convicted, imprisoned and released before July 27, 2006."). *Id*. In the absence of an Attorney General rule defining the obligations of this class of offenders, Mr. Bournes has no duty to register under SORNA. *See* §16913(d) ("The Attorney General shall have the authority . . . to prescribe rules . . . for other categories of sex offenders who are unable to comply with subsection (b) of this section").

In fact, the SMART Guidelines go to great lengths, in three pages of discussion, to emphasize that pre-SORNA offenders, like Mr. Dean, who were already released from prison when SORNA was enacted "cannot be registered within the normal SORNA time frame (i.e., before release from imprisonment or within three business days of sentencing for the registration offense)" under Section 16913(b). 72 Fed. Reg. at 30228. The Guidelines explicitly state that such offenders have a duty to register only after the local jurisdiction "implements the SORNA requirements in its system." 72 Fed. Reg. at 30228 (emphasis added).

Moreover, even if Mr. Dean was able to register under Alabama's sex offender law, this does nothing to diminish the fact that he was "unable" to register under SORNA before his release from prison. The Guidelines state that notwithstanding an offender's duty to register under state law, it will "not be possible" to register under Section 16913(b) of SORNA if the offender was released

from prison before SORNA was enacted. 72 Fed. Reg. at 30228 (Example 2). Such offenders have

a duty to register only after the local jurisdiction implements SORNA. 72 Fed. Reg. at 30228. As

will be discussed below, Alabama has not yet implemented SORNA and because Mr. Dean was

"unable" to initially register under SORNA, he has no duty to register under SORNA, and therefore,

the Act is not yet applicable to him.

> **B.** **The Attorney General Has Not Promulgated Regulations Making the Act Retroactive to Persons Convicted Before its Implementation in a Particular State**

Although SORNA was signed into law on July 26, 2006, Congress did not set a precise date

when the sex offender provisions are to be effective. Congress only fixed a deadline of July 27, 2009

for the implementation of the Act by all jurisdictions. Instead, Congress delegated to the Attorney

General the authority to specify the retroactive applicability of SORNA to both (a) those who were

"convicted before July 27, 2006," and (b) those who were "convicted before . . . its implementation

in a particular jurisdiction." 42 U.S.C. §16913(d).

The Attorney General has now issued a regulation providing that SORNA is applicable to

those convicted before July 27, 2006. 27 C.F.R. § 72.3. But the Attorney General has not issued

a regulation declaring that SORNA applies to those convicted before the Act is implemented in a

particular state. Thus, no authority exists making SORNA retroactive in jurisdictions that have yet

done what the Act requires. Moreover, the Attorney General's SMART Guidelines affirmatively

indicate that SORNA is not effective in pre-implementation jurisdictions. The following language

makes plain that sex offenders with "pre-SORNA implementation convictions," like Mr. Dean, have

a duty to register only after the jurisdiction implements the federal law:

> With respect to sex offenders with pre-SORNA or pre-SORNA implementation

10

> convictions who remain in the prisoner, supervision, or registered sex offender populations *at the time of implementation* . . . jurisdictions should endeavor to register them with SORNA quickly as possible.

72 Fed. Reg. at 30228 (emphasis added).

That Alabama has not implemented SORNA is indisputable. As noted by the Attorney General in the SMART Guidelines, a jurisdiction has not implemented SORNA until it has (1) "carrie[d] out the requirements of SORNA as interpreted and explained in these Guidelines," and the SMART Office has determined that it has done so. 72 Fed. Reg. at 30213-30214. Neither mandate has been met here.

Alabama currently has no procedure in place to collect, maintain, and disseminate the detailed information as required under SORNA. Alabama's procedures regarding sex offender reporting guidelines are contained in Chapter 20 of Title 15 of the Code of Alabama. §§15-20-1 *et. seq.* Critical differences exist between the current Alabama sex offender law and the more onerous SORNA. In the most striking example, SORNA requires authorities to post detailed information about offenders in the public on-line registry. Alabama law does not require this detailed information and requires that this information be disseminated by way of a paper community notification flyer. There is no requirement under Alabama law to maintain a public on-line registry. Compare 42 U.S.C. §16918 with Ala. Code, Crim. Proc. §15-20-21 and §15-20-25. This difference alone illustrates that Alabama has no system in place to carry out SORNA's registration and notification requirements. SORNA also requires offenders to provide the license plate number and a description of any vehicle owned or operated by them as well as photocopies of their driver's licenses, whereas Alabama law does not. Compare 42 U.S.C. § 16914 with Ala. Code, Crim. Proc. §15-20-21 et. seq. SORNA requires offenders to provide internet identifiers and addresses,

telephone numbers, travel information, temporary lodging information, and professional licensing information, whereas Alabama law does not. *Id.*

In addition, the Alabama legislature apparently has not yet even begun to consider the implementation of SORNA, as there does not appear to be bills in either the House or Senate to develop the procedures required. Because Alabama has not yet complied with SORNA, the SMART Office is unable to certify Alabama's compliance. And if Alabama has failed to implement SORNA, Mr. Dean cannot therefore be subject to the Act's constraints.

**B.    To Punish Mr. Dean for a Law that Is Not Yet Applicable to Him Would Violate the *Ex Post Facto* Clause**

Punishing Mr. Dean for failing to register under SORNA – a law not yet applicable to him – would violate the *Ex Post Facto* Clause of the Constitution. *See* U.S. Const., art. I, §9, cl. 3. In *Weaver v. Graham*, 450 U.S. 24 (1981), the United States Supreme Court explained that the *Ex Post Facto* Clause prohibits punishment of a defendant "for an act which was not punishable at the time it was committed." 450 U.S. 24, 28. The Supreme Court reasoned: "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when . . . punishment [is increased] beyond what was prescribed when the crime was consummated." *Id.* at 30-31.

The prosecution must establish that the applicable provision of SORNA was effective on the alleged date of the offense. There are four potential dates to consider as the effective date of 18 U.S.C. § 2250 as applied to Mr. Dean in this case. The possibilities are the date of enactment, July 27, 2006; the date of the interim regulation, February 28, 2007; the date Alabama implements SORNA; and the date Mr. Dean is registered under SORNA. Because the last two dates have not

yet occurred, and Mr. Dean asserts that either the date Alabama implements SORNA or the date Mr.

Dean is registered under SORNA can be the only possible effective dates, then this prosecution is

*ex post facto*. Criminally punishing Mr. Dean for failure to register under SORNA when he had no

such duty to register directly violates this principle.[3]

> ### C.    To Punish Mr. Dean for a Law with Which He Is Unable to Comply Violates the Due Process Clause

SORNA explicitly provides that one is "unable" to register in a jurisdiction where the Act

has yet to be implemented. 42 U.S.C. §16913(d). By doing so, the statute recognizes that where a

state, like Alabama, has not passed legislation conforming its sex offender registry with SORNA's

requirements, it is impossible for a sex offender in that jurisdiction to register under SORNA.

Simply put, if a state has not yet conformed its registry with SORNA, no state apparatus exists

through which the offender can come into compliance with SORNA. Criminalizing the failure to

do something that is impossible to do violates the Due Process Clause's guarantee of fundamental

fairness. *See United States v. Dalton*, 960 F.2d 121, 124 (10th Cir. 1992) (it is a violation of

fundamental fairness to hold someone liable for a crime when an essential element of the crime is

---

[3] A retroactive application of SORNA to Mr. Dean would also violate the *Ex Post Facto* clause by increasing Mr. Dean's punishment for an offense committed over a decade ago. In *Smith v. Doe*, 538 U.S. 84 (2003), a divided Supreme Court narrowly held that the retroactive application of the Alaska sex offender registration statute did not violate the *Ex Post Facto* Clause because it was not punitive, but instead was civil in nature. However, the Alaska statute that was at issue in *Smith* is different in many critical ways from SORNA. SORNA's penalties are much more burdensome, onerous, and expansive than those of the Alaska statute. The Alaska statute was much more limited than SORNA in that it created a single sex offender registry that did not require dissemination of sex offender information through the Internet, did not establish a community notification program, did not establish in person reporting requirements, and did not establish felony criminal penalties. *Id.* at 90-91 (summarizing provisions of Alaska statute). These differences make it evident that unlike the Alaska statute, SORNA is indeed punitive, and therefore, its retroactive application violates the *Ex Post Facto* Clause.

his failure to perform an act that he is incapable of performing). Because it was (and remains) impossible for Mr. Dean to comply with SORNA in Alabama, punishing him for failing to register under that statute violates his due process rights.


## II.    MR. DEAN HAD NO DUTY TO REGISTER UNDER SORNA BECAUSE THE GOVERNMENT FAILED TO NOTIFY HIM OF THE ACT'S REQUIREMENTS

### A.    SORNA and the SMART Guidelines Require the Government to Notify Offenders of SORNA Requirements

18 U.S.C. §2250(a)(3) provides that a defendant must knowingly fail to register in order to violate the statute. The plain language of 42 U.S.C. § 16917 ("Duty to notify sex offenders of registration requirements and to register") requires the Government affirmatively to inform offenders of SORNA before any duty to register under the Act arises. For individuals like Mr. Dean, whose sex offense pre-dates SORNA, and who are no longer in custody or awaiting sentencing on those offenses, SORNA explicitly directs the Attorney General to prescribe regulations to notify them of the duty to register. *See* 42 U.S.C. §16917(b); *United States v. Barnes*, 2007 WL 2119895, at *4 (S.D.N.Y. July 23, 2007) (SORNA "provides that the Attorney General has the duty to notify sex offenders of their registration requirements"); *United States v. Smith*, 2007 WL 1725329, at *3-5 (S.D.W.Va. June 13, 2007) (holding that SORNA creates an affirmative duty to notify sex offenders of registration requirements).

Although the Attorney General has issued no such regulations, the SMART Guidelines set out specific instructions for officials to follow when notifying sex offenders like Mr. Dean who have pre-SORNA implementation convictions and remain in the criminal justice system or on parole

supervision. *See* 72 Fed. Reg. at 30228:

> With respect to sex offenders with pre-SORNA or pre-SORNA implementation convictions who remain the prisoner, supervision, or registered sex offender populations at the time of implementation jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible, *including fully instructing them about the SORNA requirements, obtaining signed acknowledgments of such instructions and obtaining and entering into the registry all information about them required under SORNA.*

72 Fed. Reg. at 30228 (emphasis added).

Relying upon this specific language, the district court in *Smith*, 2007 WL 1725329, at *4, granted the defendant's motion to dismiss a failure to register indictment where the Government failed to notify the defendant in conformity with these Guidelines. The Court held that without this notice, the defendant could not have *knowingly* failed to register. *Id.* Likewise, this Court should also dismiss Mr. Dean's indictment, because the Government failed to instruct him in accordance with the SMART Guidelines, in violation of SORNA. Without this notification, like the defendant in *Smith*, Mr. Dean could not knowingly fail to register. *Id.*

In the absence of the required notice, prosecuting Mr. Dean for failing to register violates his due process rights. The Supreme Court's decision in *Lambert v. California*, 355 U.S. 225 (1958) illustrates this point. In that case, the Court invalidated under the Due Process Clause, a prosecution for failing to register as a felon, as required by a Los Angeles city ordinance. In finding a due process violation, the Court held that when "wholly passive" conduct such as the "mere failure to register" is criminalized, notice is essential:

> Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that a citizen has the chance to defend charges. ... Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. ... [T]he principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for

condemnation in a criminal case.

*Id.* at 228.   As was the defendant in *Lambert*, Mr. Dean is being prosecuted for wholly passive

conduct – failing to register – when he had no notice that a federal statute required him to do so.

Applying 18 U.S.C. § 2250 to Mr. Gould thus violates due process.[4]

Moreover, any notice to register that Mr. Dean may have received under state law cannot

substitute for notice under SORNA.   In fact, the SMART Guidelines include an example that

clarifies that notice to register under an existing state sex offender law does not serve as notice under

SORNA:

> Example 2: A sex offender is required to register for life by a jurisdiction based on
> a rape conviction in 1995 for which he was released from imprisonment in 2005. The
> sex offender was initially registered prior to his release from imprisonment on the
> basis of the jurisdiction's existing law, but the information concerning registration
> duties he was given at the time of release did not include telling him that he would
> have to appear periodically in person to verify and update the registration information
> (as required by SORNA § 116) because the jurisdiction did not have such
> requirement at the time. *So the sex offender . . . will have to be given new instructions
> about that as a part of the jurisdiction's implementation of SORNA.*

72 Fed. Reg. 30228 (emphasis added).

This example is directly applicable here. The Government alleges Mr. Dean signed

---

[4] Some district courts have summarily concluded that a due process violation does not occur
even when a sex offender is not on notice of his duty to register under SORNA because "ignorance
of the law is no excuse."  *See United States v. Mitchell*, 2007 WL 2609784, at *2 (W.D. Ark. Sept.
6, 2007); *United States v. Manning*, 2007 WL 624037, at *2 (W.D. Ark. Feb. 23, 2007).   However,
the Supreme Court in *Lambert* specifically rejected this argument. 355 U.S. at 228.   The Court
emphasized that because failure to register is a "wholly passive" act, it requires notice under due
process.  *Id.*   Because the district courts' opinions in *Mitchell* and *Manning* ignore this Supreme
Court precedent, the opinions have no precedential value here.
    Moreover, these opinions are flawed because they fail to address the plain language of
SORNA and the SMART Guidelines, which direct Government officials to affirmatively notify sex
offenders of their obligation to register.  42 U.S.C. § 16917; 72 Fed. Reg. at 30228.

documents from Georgia and Minnesota acknowledging that he was subject to registration. However, the notice to register as required by Georgia and Minnesota law – documents that pre-dated SORNA – could not have possibly informed Mr. Dean of SORNA's requirements. Absent proof of notice of SORNA's requirements, the Government cannot prove that Mr. Dean *knowingly* failed to register.

Because the Government never notified Mr. Dean of his duty to register under SORNA and the attendant penalties that a violation might carry, his due process rights were violated.[5]

### III.    42 U.S.C. § 16913(d), ALLOWING THE ATTORNEY GENERAL TO MAKE THE ACT RETROACTIVE, VIOLATES THE NONDELEGATION DOCTRINE

Even if Mr. Dean is subject to SORNA and had a duty to register under the terms of the Act, the Act is unconstitutional. By delegating to the Attorney General the broad authority to specify SORNA's applicability to offenders convicted before the passage of the Act, before SORNA's implementation, and before they are initially able to register, Congress violated the non-delegation doctrine. *See* 42 U.S.C. § 16913(d).

"Congress is manifestly not permitted to abdicate or transfer to others the legislative functions with which it is [constitutionally] vested." *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935). This "non-delegation doctrine is rooted in the principle of separation of powers that

---

[5] Contrary to the district court's opinion in *Barnes*, some district courts have treated notice of a state registration requirement as sufficient notice of SORNA requirements. *See United States v. Hinen*, 487 F. Supp.2d 747, 754 (W. D. Va. 2007); *Mitchell*, 2007 WL 2609784 at *2; *Manning*, 2007 WL 624037, at *2. These opinions are flawed because they fail to acknowledge or analyze the significant differences between SORNA and state law.

underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989).

Although the non-delegation doctrine does not prevent Congress from obtaining the assistance of its coordinate Branches, it can do so only if Congress gives clear guidance to the executive branch as to the intent of the legislation. *Id*. at 372-73. This means that Congress must "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Id*. at 372-73 (citation and quotation omitted).[6] In both *Panama Refining Co.*, 293 U.S. 421, and *Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Supreme Court held that Congress had unconstitutionally authorized the Executive to make laws because "Congress had failed to articulate any policy or standard that would serve to confine the discretion of the authorities to whom Congress delegated power." *Mistretta*, 488 U.S. at 374 , n.7; *see Panama Refining Co.*, 293 U.S. at 421 (Congress unconstitutionally, without any guidance, authorized the Executive to prohibit the transportation of excess petroleum, subject to fine and imprisonment); *Schechter*, 295 U.S. at 495 (Congress unconstitutionally authorized the Executive to prescribe codes of fair competition, the violation of which would be a misdemeanor).

Similarly, in SORNA, Congress failed to articulate any policy to guide the Attorney General on the retroactivity of the Act. Congress gave no guidance to the Attorney General as to whether all individuals who were convicted of sex offenses prior to the Act should be subject to SORNA, regardless of the remoteness of their offenses, regardless of when they completed their sentences, and regardless of the nature of the offenses. Instead, Congress gave the Attorney General sole

---

[6] In *Mistretta*, unlike it guidance for SORNA, Congress gave the Sentencing Commission very specific and detailed guidance on how to promulgate the Sentencing Guidelines. *Id*. at 374. Thus, the Supreme Court found that Congress did not delegate its legislative duties to the Executive. *Id.*

18

discretion to determine who should be subject to SORNA and who should not.  In unbridled fashion, Congress handed the Attorney General the awesome power of legislating the breadth of the Act. This is no small delegation because a retroactive sex offender law can ruin families, subject persons to job loss, harassment, homelessness, and violence.  It can threaten public safety by destabilizing the lives of those posted on the Internet, creating a risk of recidivism in those who would not otherwise recidivate, and making it more difficult for authorities to keep track of and supervise those who would. *See, e.g.*, Richard Roesler, *Sex offenders without addresses throw notification system for a loop*, Spokesman Review, The (Spokane), September 6, 2005. *See also* NACDL, Sex Offender Resources, available at http://www.nacdl.org; Hanson, R. Karl and Morton-Bourgon, Kelly, *Predictors of Sexual Recidivism: An Updated Meta-Analysis* (2004); Association for the Treatment of Sex Offenders, *The Registration and Community Notification of the Adult Sex Offender* at 3 (2005); Tewksbury, Richard, *Collateral Consequences of Sex Offender Registration*, Journal of Contemporary Criminal Justice (2005), available at http://ccj.sagepub.com; Human Rights Watch, *No Easy Answers: Sex Offender Laws in the US* (2007), available at http://hrw.org/reports/2007/us0907.  If Congress intends any law, particularly one like this, to have retroactive effect, it must follow the path charted in the Constitution.  Here, Congress explicitly handed this quintessentially legislative function to an official in the Executive Branch charged with law enforcement.  As such, it abdicated its proper role and violated the separation of powers.

IV.   **THE ATTORNEY GENERAL'S REGULATION RETROACTIVELY APPLYING SORNA WAS PROMULGATED WITHOUT NOTICE AND COMMENT AND VIOLATES THE ADMINISTRATIVE PROCEDURE ACT**

The February 28, 2007 regulation retroactively applying SORNA to all persons convicted of

19

sex offenses prior to the Act's enactment on July 27, 2006 was issued in violation of the Administrative Procedure Act (APA), 5 U.S.C. §553, because the Attorney General failed to provide notice to the public and a comment period as required by 5 U.S.C. § 553(d) before the rule became effective.  The APA normally requires agencies to publish a proposed rule in the Federal Register and give interested parties the opportunity to submit comments and other relevant material at least 30 days before it becomes effective. 5 U.S.C. § 553(d).

However, the APA permits agencies to enact rules without a notice and comment period for "good cause" where it is "impractical, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b). The " good cause" exception is to be narrowly construed and only reluctantly countenanced. "The exception is not an escape clause; its use should be limited to emergency situations." *Utility Solid Waste Activities Group v. Environmental Protection Agency*, 236 F.3d 749, 754 (D.C. Cir. 2001) (omitting citations and quotations).  Here, the Attorney General erroneously relied upon the "good cause" exception in foregoing the public notice and comment period. The Attorney General claimed that notice and comment was "impractical, unnecessary, and contrary to public interest." 72 Fed. Reg. at 8896.  In support of his assertion, the Attorney General stated that the "immediate effectiveness of the rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements." 72 Fed. Reg. at 8896.  Moreover, the Attorney General explained that "[d]elay in the implementation of [the] rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders through prosecution and the imposition of criminal sanctions." 72 Fed. Reg. at 8896.  However, these assertions have no basis even when evaluated against the Attorney General's own manual interpreting the "good cause" exception under the APA.  According to the Attorney General's

20

Manual, a 30-day public notice and comment period is "impracticable" under the APA when "an agency finds that due and timely execution of its functions would be impeded by the notice otherwise required in [§ 553]." *Utility Solid Waste Activities Group*, 236 F.3d at 754 (citing Attorney General's Manual on the Administrative Procedure Act (1947) at 30-31). Here, a 30-day waiting period could not have delayed registrations or impeded the functioning of law enforcement agencies: the states are not obligated to comply with SORNA until at least July, 2009. See 42 U.S.C. § 16924. More than a year after SORNA's enactment, no state – including Alabama – has a mechanism in place to register sex offenders under SORNA. Further, the Attorney General's regulation provides no guidance on how states are to register sex offenders prior to implementation.

Foregoing the 30-day waiting period did nothing to change this reality. Accordingly, a notice and comment period was not "impracticable." Likewise, a notice and comment period was not "contrary to the public interest." The Attorney General's Manual provides that this ground is satisfied when "the interest of the public would be defeated by any requirement of advance notice." *Utility Solid Waste Activities Group*, 236 F.3d at 754 (citing Attorney General's Manual at 31). For the same reasons noted in the above-paragraph, a waiting period would not have compromised the purported public interest here (expediting registrations), since the Attorney General's regulation plainly fails to achieve this result.

Finally, the notice and comment period was not "unnecessary." The Attorney General's manual explains that this term refers to "the issuance of a minor rule in which the public is not particularly interested." *Id*. (citing Attorney General's Manual at 31); *see also South Carolina v. Block*, 558 F. Supp. 1004, 1016 (D.S.C. 1983) ("unnecessary" exception is "confined to those situations in which the administrative rule is a routine determination, insignificant in nature and

impact, and inconsequential to the industry and to the public."). Certainly, an all encompassing rule that purports to make SORNA retroactive to all offenders who ever committed a sex offense fails to meet this definition of "unnecessary."

For all the reasons noted above, the Attorney General had no "good cause" to excuse the APA's notice and comment period. Thus, the rule should be invalidated. *See Nat'l Org. Of Veterans' Advocates, Inc. v. Sec'y. of Veterans Affairs*, 260 F.3d 1365, 1375 (Fed. Cir. 2001) ("Failure to allow notice and comment, where required, is grounds for invalidating the rule.") (*citing Auer v. Robbins*, 519 U.S. 452, 459 (1997)).

## V.    CONGRESS EXCEEDED ITS POWER UNDER THE COMMERCE CLAUSE BY ENACTING TWO SPECIFIC PROVISIONS OF SORNA—18 U.S.C. §2250(A) AND 42 U.S.C. §16913

Section 2250(a) creates a federal offense where an individual (1) is required to register under SORNA; (2) travels in interstate commerce; and (3) knowingly fails to register or update a registration as required by SORNA.  Section 16913 imposes registration requirements on all sex offenders in the United States regardless of whether they travel in interstate commerce or not.

The Commerce Clause delegates to Congress the power "[t]o regulate Commerce . . . among the several States." U.S. CONST. art. I, § 8, cl. 3.  Congress has the power to regulate "three broad categories of activity" under the Commerce Clause: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558 (1995).

### A.    18 U.S.C. § 2250(a)

22

18 U.S.C. § 2250(a) violates the Commerce Clause because Congress cannot federally criminalize a local sex offender's failure to register in a state-run registry. Although §2250(a) contains a jurisdictional element requiring a sex offender to travel in interstate commerce, this element is insufficient to bring the Act within Congress' Commerce Clause power because the Act does not relate the purpose of the travel to the failure to register. Section 2250(a) does not specify when the travel must have occurred. To uphold §2250(a) without requiring a temporal connection between the travel and failure to register would allow Congress to federalize nearly any local criminal offense by simply making it a crime for someone who committed the offense to travel in interstate commerce at some point in his life.

Section 2250(a) falls within the first and second categories of activity Congress can regulate under the Commerce Clause because it requires sex offenders to use the channels of interstate commerce or travel in interstate commerce before subjecting them to criminal penalties. *See Lopez*, 514 U.S. 549, 558 (1995). The statute does not, for example, require sex offenders to cross state lines for the purpose of evading registration laws. It is thus distinguishable from other federal criminal statutes that have been upheld against constitutional challenges based on their requirement of a direct link between the criminal act and travel in interstate commerce. *See, e.g., Hoke v. United States*, 227 U.S. 308, 321 (1913) (upholding the Mann Act, which criminalizes the knowing transportation of an individual in interstate commerce with the intent that such individual engage in prostitution); *United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) (upholding the Hobbs Act, which prohibits, *inter alia*, robbery that obstructs, delays, or affects commerce or the movement of any article or commodity in commerce). Section 2250(a) must fail because it does not require a jurisdictional element of travel and the criminal act of failing to register.

### B.    42 U.S.C. § 16913

However, even if this Court should find that §2250(a) is a valid exercise of Congress'
Commerce Clause power, Mr. Dean cannot be convicted under the statute because he should not
have been required to register under §16913 in the first place.  The registration requirements found
at §16913 also exceed Congress' power under the Commerce Clause.  Mr. Dean contends §16913
is unconstitutional because Congress lacks the power to force citizens who have been convicted of
purely local offenses under state law to register as sex offenders.

A conviction for failure to register as a sex offender is predicated upon proof that the
defendant was required to register under §16913. 18 U.S.C. § 2250(a).  Section 16913, in turn,
requires all sex offenders in the United States to register.  Unlike § 2250(a), its requirements are not
limited to only those sex offenders who travel in interstate commerce.  By its terms, §16913 does
not regulate the use of the channels of interstate commerce or the instrumentalities of interstate
commerce.  Therefore, it cannot be upheld under either of the first two categories of activity subject
to regulation under the Commerce Clause.  Instead, if it is to be sustained under the Commerce
Clause it must fall within the third *Lopez* category, *i.e.*, regulation of "activities that substantially
affect interstate commerce."[7] 514 U.S. at 558.

Only a few courts have considered whether §16913, as opposed to §2250(a), is a valid

---

[7]    Justice Scalia's concurring opinion, and to a lesser extent, the majority opinion, in
*Gonzales v. Raich* recognized that Congress' power to regulate activities under the third Lopez
category is not derived from the Commerce Clause alone. *Raich*, 545 U.S. 1, 5, 17, 22 (2005); *id.*
at 34 (Scalia, J., concurring). Rather, it results from the interplay between the Commerce Clause and
the Necessary and Proper Clause. *Id.*  Moreover, the interplay between the Commerce Clause and
the Necessary and Proper Clause may permit Congress to regulate categories of activity beyond those
that substantially affect interstate commerce. *Raich*, 545 U.S. at 34–35 (Scalia, J., concurring). For
these reasons, I will discuss the constitutionality of §16913 under the Necessary and Proper Clause
separately below.

exercise of Congress' power to regulate activities that substantially affect interstate commerce.  Not surprisingly, those cases that have addressed the question have relied heavily on two recent Supreme Court opinions striking down statutes under the Commerce Clause. *See Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000).

In *Lopez*, the Supreme Court considered four factors in determining whether a federal statute regulates activity that substantially affects interstate commerce. 514 U.S. at 561–64.  These are: (1) whether the regulated activity is economic in nature; (2) whether the statute contains a jurisdictional element which establishes "an explicit connection with or effect on interstate commerce;" (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) the link between the regulated activity and its substantial effect on interstate commerce. *Id*.

The Court in *Lopez* determined the Gun-Free School Zones Act, which made it a federal crime to knowingly possess a firearm in a school zone, did not satisfy any of these factors. *Id*.  The Court first noted the statute "by its terms has nothing to do with commerce or any sort of economic enterprise, however broadly one might define those terms." *Id*. at 561.  Nor was the statute an "essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id*.  Second, the Court found that the statute lacked an express jurisdictional element "which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id*. at 561–62.  Third, the legislative history of the statute did not contain express congressional findings regarding the effects on interstate commerce of gun possession in school zones. *Id*. at 562–63.  And fourth, the Court rejected the government's "costs of crime" and "national productivity" arguments

for upholding the statute. *Id.* at 563–64. The government unsuccessfully argued that the possession of a firearm in a school zone could result in violent crime and violent crime would affect the national economy by driving up the cost of insurance, reducing the willingness of individuals to travel throughout the country, and crippling the educational process. *Id.* The Court rejected these attenuated effects and recognized that acceptance of the government's argument would grant Congress unlimited power under the Commerce Clause. *Id.*

The Supreme Court arrived at a similar result in *Morrison*. There the Court relied on the same factors to strike down a statute that created a federal civil remedy for victims of gender-motivated crimes of violence. 529 U.S. at 607–18. The statute at issue was found to not regulate economic activity or contain a jurisdictional element. *Id.* at 613. Moreover, although the statute was supported by express congressional findings regarding the effects upon interstate commerce of gender-motivated violence, the congressional findings relied on the same "costs of crime" and "national productivity" arguments the Court rejected in *Lopez*. *Id.* at 614–15.

Section 16913 has nothing to do with commerce or any sort of economic enterprise; it regulates purely local, non-economic activity. While certain sex offenses may be commercial or economic in nature (e.g., child pornography), sex offenders themselves are not necessarily engaged in commercial or economic activity. Even though the Adam Walsh Act regulates some sex offenses that are commercial (e.g., the distribution of child pornography), its regulation of sex offenders is not indispensable to the success of its other provisions. Unlike §2250(a), §16913 has no express jurisdictional element to limit its reach to sex offenders connected with or affecting interstate commerce. SORNA's legislative history contains no express congressional findings regarding the effects of sex offender registration on interstate commerce. Although tracking sex offenders may

26

enhance public safety and may in turn promote a more productive economy, any effect on interstate commerce from requiring sex offenders to register is too attenuated to survive scrutiny under the Commerce Clause. *See Lopez*, 514 U.S. at 563–64; *Morrison*, 529 U.S. at 617.

Recently, in *United States v. Waybright*, Case 9:08-cr-00016 (D. Mont. June 11, 2008), the court found that §16913 is not a valid exercise of Congress' Commerce Clause power. *Waybright*, Case 9:08-cr-00016 at 21-22.

If, as Mr. Dean asserts and the *Waybright* Court found, §16913 cannot be sustained under the Commerce Clause, it becomes necessary to analyze its validity in relation to the exercise of any other power delegated to Congress in the Constitution. Several district courts have reviewed §16913 and approved of Congress' enactment of §16913 pursuant to powers other than the Commerce Clause power. For example, in *United States v. Thomas*, 534 F. Supp. 2d 912, 920–22 (N.D. Iowa 2008), the court determined that while the enactment of §16913 was not within Congress' Commerce Clause power, it was a valid exercise of Congress' power under the Necessary and Proper Clause.

The Necessary and Proper Clause authorizes Congress to "make all Laws which shall be necessary and proper for carrying into Execution the [Congressional] Powers" enumerated in the Constitution. U.S. CONST. art. I, § 8, cl. 18. The Supreme Court explained the scope of the Necessary and Proper Clause in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819), stating:

> [W]e think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

27

Congress is permitted to regulate intrastate activities under the Necessary and Proper Clause that do not involve interstate commerce if such regulation is necessary to make a regulation of interstate commerce effective. *Raich*, 545 U.S. at 35 (Scalia, J., concurring). "The relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power." *Id*.

The *Thomas* court determined §16913 was an appropriate and reasonably adapted means for Congress to attain the legitimate end of §2250(a)—monitoring sex offenders who cross state lines. 534 F. Supp. 2d at 921. However, the *Thomas* court's analysis relies on Justice Scalia's characterization of the interplay between the Commerce Clause and the Necessary and Proper Clause in *Raich*. *Thomas*, 534 F. Supp. 2d at 921. *Raich* in turn addressed whether Congress could regulate the local cultivation of marijuana for medicinal purposes as part of a larger regulatory scheme—the Controlled Substances Act ("CSA")—aimed at combating interstate trafficking in illicit drugs. 545 U.S. at 9. In concluding the regulation of intrastate marijuana cultivation was necessary to regulate interstate trafficking in marijuana, and thus upholding the CSA, the Court relied heavily on the economic and commercial nature of the drug trade. *Id*. at 18–19, 22. There is an established, and lucrative, interstate market for controlled substances. Prohibiting the intrastate possession or manufacture of controlled substances is a rational means of regulating that product. *Id*. at 26. The Court specifically distinguished the statutes at issue in *Lopez* and *Morrison* from the CSA by acknowledging that the former statutes dealt with non-economic activities. *Id*. at 23–25; *id.* at 38 (Scalia, J., concurring) ("[T]he power to enact laws enabling effective regulation of interstate commerce can only be exercised in conjunction with congressional regulation of an interstate market."). Just like the statutes at issue in *Lopez* and *Morrison*, SORNA does not regulate any sort

28

of economic or commercial activity. There is no market for sex offenders. So, Congress does not need to regulate sex offenders who remain in a single state in order to effectively regulate sex offenders who travel in interstate commerce.

The *Thomas* court's reliance on *Raich* is not dispositive of this issue because §16913 is not a means to an end; it is the end of SORNA. The Court in *Raich* recognized that Congress can regulate interstate trafficking in illicit drugs under the Commerce Clause. 545 U.S. at 15. The issue considered in *Raich* was whether Congress could regulate activities beyond the scope of its Commerce Clause power in order to fill in gaps left in the CSA because of the limits of that power. *Id.* The Court approved of such a practice in *Raich*, finding that the regulation of the intrastate cultivation of marijuana was "merely one of many essential part[s] of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* at 24–25 (quotation omitted); *see also id.* at 36 (Scalia, J., concurring).

Unlike the intrastate regulation approved of in *Raich*, §16913 is not one part of many essential parts of a larger regulatory scheme. Nor is it intended to fill in the gaps in an otherwise valid exercise of Congress' power. Unlike the regulation of interstate drug trafficking, the creation of a federal crime for sex offenders who travel in interstate commerce and fail to register is not the overriding purpose of SORNA. The purpose of the Act is to "establish[] a comprehensive national system for the registration of [sex offenders]." 42 U.S.C. §16901. This primary purpose is accomplished by the enactment of §16913. Unlike the CSA, which utilized the necessary and proper power to fill in the gaps of an overarching statutory scheme that was valid under the Commerce Clause power, SORNA attempts to utilize the necessary and proper power to enact an overarching statutory scheme based on the existence of Commerce Clause authority to enact a small

part of that larger scheme. The Necessary and Proper Clause was not intended to bestow this authority on Congress. *See Maryland v. Wirtz*, 392 U.S. 183, 197 n.27 (1968) ("Congress may [not] use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities."). The Necessary and Proper Clause can come to the aid of validly exercised commerce power but the commerce power cannot come to the aid of the Necessary and Proper Clause. Because the regulation of sex offenders is not economic or commercial in nature, §16913 is not merely a means to creating a federal crime for sex offenders who travel in interstate commerce and fail to register.

The *Waybright* court found that "Section 16913 is not a valid exercise of any of the congressional powers enumerated in the Constitution. As a consequence, Section 16913 is unconstitutional." *Waybright,* Case 9:08-cr-00016 at 28. Mr. Bournes asserts that the *Waybright* analysis of Section 16913's constitutionality should be applied in his case. Because it is first necessary for the government to demonstrate that Mr. Bournes was required to register under §16913 in order to obtain a conviction under 18 U.S.C. §2250(a), if this Court is persuaded that §16913 is unconstitutional, then the government will be unable to satisfy its burden of proof as to §2250(a). Therefore, the indictment must be dismissed.

## VI.    18 U.S.C. § 2250(a)(2)(A) VIOLATES THE COMMERCE CLAUSE BY PUNISHING PURELY LOCAL INTRASTATE ACTIVITY THAT DOES NOT SUBSTANTIALLY AFFECT INTERSTATE COMMERCE

To the extent that the Indictment relies upon the jurisdictional provision contained in 18 U.S.C. § 2250(a)(2)(A), i.e., that Mr. Dean is a sex offender required to register under SORNA because of his prior conviction under the law of the State of Florida, dismissal is warranted. Section

2250(a)(2)(A), which regulates a purely intrastate activity – failure to register – that does not substantially affect interstate commerce, violates the Commerce Clause.

The Supreme Court's decisions in *United States v. Lopez* , 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000) provide critical guidance on this issue. First, in *Lopez*, the defendant challenged his conviction under the Gun-Free School Zones Act, 18 U.S.C. § 922(q). That section of the U.S. Code made it unlawful for any individual to knowingly possess a firearm in a school zone. The Court held that the statute exceeded Congress's power to legislate under the Commerce Clause. *Id*. at 567. The Court began its analysis by holding that Congress only has authority to regulate an action that occurs purely within the state when the activity substantially affects interstate commerce. *Id*. at 558, 560. Applying this holding to the facts of *Lopez*, the Supreme Court held that possession of a gun in a school zone was purely intrastate activity that "had nothing to do with commerce or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 561.

In reaching this conclusion, the Court in *Lopez* rejected the Government's arguments that possession of a firearm in a school zone affects interstate commerce by increasing violent crime which, in turn, results in substantial financial costs to society. *Id*. at 563-64. First, the Government argued that violent crime stemming from handgun possession increases the cost of medical insurance for the general population. *Id.* Second, the Government argued that "violent crime reduces the willingness of individuals to travel to areas within the country that are perceived to be unsafe." *Id.* Third, the Government argued that "the presence of guns in schools poses a substantial threat to the educational process by threatening the learning environment; [a] handicapped educational process, in turn, will result in a less productive citizenry." *Id.*

31

The Court refused to accept these arguments after emphasizing the far-reaching implications of such assertions.  Specifically, the Court explained:

> [U]nder [the Government's] "costs of crime" reasoning . . . Congress [ ] could regulate not only all violent crimes, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce. . . . Under the theories that the Government presents . . . it is difficult to perceive any limitation on federal power, even in areas such as criminal law enforcement or education where States historically have been sovereign. Thus if we were to accept the Government's arguments, we are hard pressed to posit any activity by an individual that Congress is without power to regulate.

*Id.* at 564. The Court concluded that "the possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567.  Just as a gun in a local school zone is "in no sense" an economic activity that might have an impact upon interstate commerce, a sex offender who fails to register is "in no sense" an economic activity.  *See Id.*

In *Morrison*, 529 U.S. 598, the Court again disapproved of Congress's use of the Commerce Clause as a basis for federal jurisdiction over purely intrastate criminal activity.  There, the Court struck down a portion of the Violence Against Women Act, 42 U.S.C. § 13981, because the activity being regulated, gender-motivated violence, was an intrastate activity that did not substantially affect interstate commerce. 529 U.S. at 613-617.  In doing so, the Court rejected the same arguments the Government made in *Lopez* regarding the financial costs of violent crime (e.g., the activity affects commerce by deterring travel, by diminishing national productivity, and resulting in medical costs imposed on the greater population). *Id*. at 615.  The Court again warned that the Government's reasoning would allow "Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption."  It refused

32

to endorse Congress's tenuous approach:

> We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce. The Constitution requires a distinction between what is truly national and what is truly local.

*Id.* at 617-618.

In light of *Lopez* and *Morrison*, Congress's attempt to sanction persons convicted for the mere failure to register under SORNA violates the Commerce Clause. Failure to register is a purely local intrastate action that does not affect interstate commerce in any fashion – let alone substantially affect interstate commerce. It has no commercial character, nor any relation to economic activity of any kind. Moreover, *Lopez* and *Morrison* preclude the Government from arguing that §2250(a)(2)(A) falls within the confines of the Commerce Clause because the failure to register somehow may lead to financial burdens on society.

**WHEREFORE**, for the reasons set forth above**,** and any others that may be raised during a hearing on this motion, Mr. Dean respectfully requests that this Honorable Court dismiss the Indictment.

Dated this 28th day of July, 2008.

Respectfully submitted,

s/ Aylia McKee
AYLIA MCKEE
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: aylia_mckee@fd.org
ASB-6178-A39M

33

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **V.** | **)** | **CASE NO: 2:08CR50-WKW** |
| | **)** | |
| **CHRISTOPHER DEAN** | **)** | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Jerusha Adams, Assistant U.S. Attorney.

Respectfully submitted,

s/ Aylia McKee
AYLIA MCKEE
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: aylia_mckee@fd.org
ASB-6178-A39M

34